A. F. EVANS, Executor of LUCY B. DARNALL, Respondent, v. UNITED STATES FIDELITY & GUARANTEE CO., Appellant.

Kansas City Court of Appeals, January 27, 1917.

1. **MORTGAGES AND DEEDS OF TRUST:** Redemption: Bond. The filing of the bond required by section 2830, R. S. 1909, providing for the redemption of real estate from foreclosure under a mortgage or deed of trust, is a condition precedent to the right to redeem and such right cannot be exercised without it.

2. ————: ————: Liability of Surety: Effect of Property Being in Hands of Receiver: Waste ''Occasioned or Permitted.'' The fact that the property was in the hands of a receiver at the time the bond to redeem was given does not relieve the owner of his obligation not to "occasion or permit waste" nor absolve him or his surety from liability for neglecting to prevent it. Waste is an injury to the freehold lessening the value of the inheritance, and may be permissive as well as active or commissive. "Occasion," used as a verb, means to cause or bring about by furnishing the condition or opportunity for the action of some other cause, while the word "permit" has different meanings one of which is to describe that situation where the mind does not affirmatively agree to the act but has the right and means to interfere to prevent the same from transpiring, but from want of care or from laziness or neglect the person makes no move to prevent the act from taking place.

3. ————: ————: Principal and Surety: Construction of Bond. While a surety's liability is limited to the very terms of his undertaking, still a bond is construed, as any other contract, with regard to the intention of the parties, and its purpose as disclosed by the instrument, read in the light of surrounding circumstances, and a strained construction should not be adopted either to hold or release the surety.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

AFFIRMED.

*Ball & Ryland* for appellant.

*A. F. Evans* for respondent.

TRIMBLE, J.—This is an action upon a bond given to redeem real estate from foreclosure under deed of trust. Lucy B. Darnall was the holder of said deed of trust and became the purchaser at foreclosure. The bond to redeem was given by F. P. Brockett as principal with the defendant herein as surety. As first brought, the suit was by Lucy B. Darnall against said Brockett and his surety, the defendant herein. Service was not obtained on Brockett and the suit was dismissed as to him. Mrs. Darnall obtained judgment for $1000 the full amount of the bond, and the defendant appealed. After the appeal was perfected, but before it was submitted, Mrs. Darnall died and her executor, Evans, was substituted in her stead and the cause revived in the name and style under which it now appears.

The bond sued on was given pursuant to section 2830, Revised Statutes 1909, which forbids the existence of any right to redeem unless the foreclosed owner shall give security "for the payment of the interest to accrue after the sale, and for all damages and waste that may be occasioned or permitted by the party whose property is sold." The bond is conditioned as follows:

"Now, therefore, if the said F. P. Brockett shall well and truly pay all interest accruing on the note secured by said deed of trust from date of sale, to-wit, October 17, 1912, to date of redemption, and shall pay, or cause to be paid, the costs of said foreclosure sale; and shall pay, or cause to be paid, all damages and waste that may be occasioned or permitted by said F. P. Brockett, then this obligation to be void; otherwise to be and remain in full force and effect."

At the trial a jury was waived, and the defendant offered to let judgment go for the plaintiff against the surety company for the interest accruing on the debt for the year Brockett had in which to redeem, and for the costs accruing to the time of the offer. The

offer was refused, but the fact that it was made left only one question to be determined in the case, namely, whether or not the defendant was liable for waste on the premises during the time the bond was effective as affording Brockett an opportunity to redeem, to-wit, one year following the date of the sale, which, as the condition of the bond stated, was on October 17, 1912.

If we correctly understand appellant's position, it is that the surety is not liable for any damages on account of waste during the year, because the bond covers only waste "that may be occasioned or permitted by said F. P. Brockett," and defendant says none was "occasioned or permitted" by him, since the property was, during all that time, in the hands of a receiver and not in Brockett's possession. The claim is also made that the evidence is such that the amount of damages on account of waste occasioned or permitted after the execution of the bond cannot with reasonable certainty be distinguished and separated from that suffered by the property before the execution of said bond.

With reference to this last claim, that the damages on account of waste after the execution of the bond are not distinguishable from those arising before the excution thereof, the evidence amply tends to show that the damage arising after the filing of the bond and before the expiration of the year, exceeded the amount of the bond, and this, too, without taking into consideration anything for interest accruing on the debt after the sale. There is, therefore, no danger that the judgment includes too much or covers anything by way of damages from waste accruing prior to the giving of the bond.

We, therefore, proceed at once to the consideration of appellant's other point, viz, that the surety is not liable for the waste herein complained of.

A clear understanding of the question presented requires a statement of the facts in the case. The note

and deed of trust, under which the foreclosure sale was had, were executed August 9, 1909. Thereafter, Brockett became the owner of the property—an apartment house in Kansas City—subject to said deed of trust, and on August 9, 1912, said debt matured. On April 4, 1912, the Second National Bank of New Albany brought suit against Brockett on a promissory note and a writ of attachment was issued thereon, in aid of which attachment a receiver was appointed to take charge of the property involved in the suit at bar, and in this attachment suit Brockett made a special appearance limited to the application for the receiver. Said receiver was appointed September 3, 1912, and on September 18, 1912, Mrs. Darnall applied for leave to foreclose under her deed of trust. The order permitting sale in foreclosure was made September 20, 1912 and on October 17, 1912, the property was foreclosed and Mrs. Darnall brought it in. On October 23, 1912, the bond to redeem was filed. November 1, 1912, Mrs. Darnall filed, in the attachment suit, a motion for an order directing the receiver to deliver to her possession of the property sold under the deed of trust. On April 11, 1913, Mrs. Darnall filed an intervening petition in said attachment suit praying that possession of the property be delivered to her.

On April 22, 1913, Mrs. Darnall notified the defendant surety company that the property was being wasted and damaged and that application would be made for additional security. And on April 24, 1913, in the proceeding brought by Brockett to have redemption bond authorized and amount thereof fixed, Mrs. Darnall filed her petition to compel Brockett to give additional security. On May 10, 1913, the court found in favor of said petition and found that since the bond for redemption was given, the property had greatly depreciated by reason of waste, and that such damage and waste was at that time in excess of $2000, and decreed that Brockett execute and file an additional bond of $1500.

Brockett thereupon took certain steps to appeal from said decree and order.

On July 10, 1913, by an order entered in the attachment proceeding, the receiver was ordered to borrow $2500 on the property the money to be used in paying the taxes and in putting the property in tenantable condition. The receiver borrowed said amount and expended $2274.95 in making the repairs absolutely necessary to enable the property to be rented, putting a first lien on the property for that amount.

Febuary 7, 1914, Mrs. Darnall filed her amended and supplemental intervening petition in said attachment suit wherein she prayed the court to determine title to said property and direct the receiver to surrender possession of same to her. Final judgment in her favor on her said amended and supplemental intervening petition was rendered April 16, 1914, and she obtained possession of the property. On November 2, 1914, suit on the case at bar was filed.

To hold that the surety is not liable on this bond because the property, at the time of its execution, was in the hands of a receiver, would not only put a strained and narrow construction on the terms thereof, but would ignore the purpose for which a bond is required as a condition precedent to the right of redemption, and would also disregard entirely the situation in which the giving of such a bond places the foreclosure purchaser. The bond creates the right to redeem, or at least such right cannot be exercised without it. [Moss v. King, 212 Mo. 578; Walmsley v. Dougherty, 163 Mo. 294.] It secured to Brockett the right of redemption for twelve months. And it prevented Mrs. Darnall from obtaining title to the property immediately after the sale. Had she obtained a deed giving her the title, she could have taken steps to prevent the waste and damage accruing to the property during the time Brockett had in which to exercise his right to redeem. While this right lasted, Mrs. Darnall could not be expected to ex-

pend money in guarding and protecting the property as *hers* when it was in the power of Brockett and the defendant at any time to extinguish any interest she had in the property by redeeming it, that is, by merely paying the debt and interest and the expenses of sale. Mrs. Darnall had nothing to do with the fact of the property being thrown into the hands of a receiver. She did not cause that to be done, nor was she a party to that suit when it was done. By giving the bond and thereby prolonging his right to hold on to the property for a year, the obligation was on Brockett to preserve the property from waste during the time his right to redeem was being asserted. And the purpose of the statute in requiring a bond was to place upon the party giving it the obligation to see that the property did not waste during that time at least so far as any acts of commission or omission on his part are concerned. The fact that the property was in a receiver's hands did not deprive Brockett of the right to protect it from being wasted by neglect or inattention. Waste, which is an injury to the freehold lessening the value of the inheritance, may be permissive as well as active or commissive. [30 Am. & Eng. Ency. of Law (2 Ed.), 237.] And if Brockett did not actively commit the waste in this case, it certainly was not the result of positive acts on the part of a person or power beyond the ability of Brockett to prevent. Hence the question that might arise under that situation is not in the case.

It is true, a surety has the right to limit his liability to the very terms of his undertaking, but still a bond is construed in the same way as any other contract, that is, with regard to the intention of the parties and the purpose of the bond, as disclosed by the instrument read in the light of the surrounding circumstances. [Limberger v. Krieger, 88 Mo. 160, 165; Springfield Lighting Co. v. Hobart, 98 Mo. App. 277, 233.] A strained construction should not be adopted either to hold or release a surety. [Beers v. Wolf, 116 Mo. 179, 184.] Now, the bond, according to its terms, applies to

all waste "that may be occasioned or permitted by said F. P. Brockett." These two words would seem to cover not only waste that was actively committed by him, including such as arose incidentally from his treatment or lack of care of the building, but also waste passively allowed by Brockett. The word "occasion" when used as a verb, often means to cause or bring about *by furnishing the condition or opportunity for the action of some other cause.* Or, as said in 29 Cyc. 1340, "to cause incidentally or casually." This definition is recognized in Meysenburg v. Schlieper, 48 Mo. 426. So also the word "permit" has different meanings, one of which is used to describe that situation "where the mind does not affirmatively agree to the act, but has the right and the means to interfere to prevent the same from transpiring, but, from want care, or from laziness or neglect, the person makes no move to prevent the act from taking place." [Warberton v. Woods, 6 Mo. 8, l. c. 12.] Under the facts in this case, we think there is no room for the claim that the waste complained of was not occasioned or permitted by Brockett and was not within the terms of the bond. There is no evidence that the fact of a receiver being appointed made it "impossible" in the legal sense for Brockett to prevent the waste and damage that the building suffered. Legally, he had the right and the means to see to it that the building did not go to pieces from neglect or abuse. And by giving the bond, which recites that he "is the owner of" the property, he continued to assume the obligations of ownership of the property and kept Mrs. Darnall from assuming that burden until it was disclosed that Brockett had no intention of redeeming. Mrs. Darnall could not compel a deed to be made to her untill the expiration of the time allowed to redeem. [Union Central Life Ins. Co. v. Rogers, 155 Mo. 307, l. c. 312.] Consequently, her situation was like that of the plaintiff in Powell v. Dayton, etc., R. Co., 16 Ore. 33, 8 Am. St. Rep. 251. And, considering the purpose for which the bond was given and the situation of the parties, the mere fact that

the property was in the hands .of a receiver at the time the bond was given and continued so during the year Brockett had to redeem, had nothing to do with the obligation in the bond not to *permit* waste, and cannot absolve either him· or his surety from liability for neglecting to ·prevent it. We think the · principle in the Powell case is the same even though the instrument between the parties was a lease in that case and is a bond in this.

The judgment is affirmed. All concur.